IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00200-KDB-SCR

| | |
|---|---|
| OWNERS INSURANCE COMPANY AND AUTO-OWNERS INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>FINNUALA ROSE HANIFAN, JENNIFER HANIFAN, AND GERALD HANIFAN,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Finnuala R. Hanifan's ("Finnuala") Motion to Dismiss Plaintiffs' Complaint (Doc. No. 11). She argues the Court should dismiss the Complaint due to lack of personal jurisdiction, improper venue, and the Federal Arbitration Act, 9 U.S.C. § 3, *et seq.* In the alternative, she requests that the Court transfer the case to the Southern District of New York under 28 U.S.C. § 1404. *See* Doc. No. 11. The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** Defendant's Motion to Dismiss, but will order the parties to proceed to arbitration and stay the case pending its conclusion.

### I. LEGAL STANDARD

A. **Personal Jurisdiction under Rule 12(b)(2)**

1. **The Pleading Standard**

1

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.,* 935 F.3d 211, 226 (4th Cir. 2019). However, when the court addresses the question of personal jurisdiction in a Rule 12(b)(2) motion on the basis only of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In considering a challenge on such a record, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). While a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist," *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006), if a plaintiff comes "forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction . . . ." *Id.*

### 2. Types of Personal Jurisdiction

There are two types of constitutionally permissible personal jurisdiction – general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (emphasis in original) (citing *Goodyear Dunlop Tires*

*Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924).

Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 918 (citations omitted). A court may exercise specific jurisdiction over a nonresident defendant if doing so comports with both the forum state's long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g., Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Under the Fourteenth Amendment Due Process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To decide whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at

3

396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)). In other words, to satisfy the pleading requirements for specific jurisdiction, a plaintiff must plausibly allege that (1) the defendant purposefully availed itself of the privilege of conducting activity in North Carolina, (2) plaintiff's claims arise out of those activities, and (3) exercising personal jurisdiction would be fair. *See Carefirst*, 334 F.3d at 397.

### B. Arbitration under Federal Arbitration Act, 9 U.S.C. § 3

The Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under Section 2 of the FAA, a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana*

4

*Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2011). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).

If the Court sends a case to arbitration, it must stay the case if either party requests it, assuming that there are no other reasons to dismiss unrelated to the fact an issue in the case is subject to arbitration. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1176 (2024). For example, where all of the claims at issue in a lawsuit are arbitrable, but neither party has requested a stay, the court may dismiss the lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011); *see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Alternatively, where the claims at issue are arbitrable, but neither party has requested a stay, a court may choose to stay a lawsuit pending the parties' completion of arbitration. *See Silkworm Screen Printers, Inc. v. Abrams*, No. 91-1631, 1992 WL 317187, at *6 (4th Cir. Nov. 4, 1992) ("If the district court finds that [plaintiff] agreed to arbitrate . . . it may either dismiss [plaintiff's] complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration and consideration of the award pursuant to Article V of the Convention.").

## II. FACTS AND PROCEDURAL HISTORY

This matter arises out of an automobile accident that occurred in Napa County, California. Doc. No. 1 at 1. On June 23, 2019, Defendant Finnuala was involved in a one-car

5

motor vehicle accident ("the accident") while driving a 2018 Porsche leased by non-party Adrian Gonzalez. *Id.* at 2. At the time of the accident, the vehicle was insured only by a Geico Insurance Company policy with a liability limit of $100,000. Doc. No. 1 at ¶ 1, *see also* Doc. 1-1. There were no other automobile liability policies insuring the vehicle. Doc. No. 1 at ¶ 2. Finnuala, however, was personally insured under her parents' Auto-Owners Insurance Company ("Auto-Owners") policy, which afforded her $1,000,000 of liability coverage, and the umbrella policy issued by Owners Insurance Co. (collectively, the "Policy"). *Id.* at ¶ 3. On June 20, 2023, Defendant Finnuala made a written demand for $650,000 in underinsured motorist coverage or, in the alternative, arbitration under the Policy. *Id.* at ¶ 5.[1]

Auto-Owners denied Defendant Finnuala's demand for coverage and agreed to participate in arbitration on July 28, 2023. Doc. No. 1-8. Defendant Finnuala filed an action in California state court seeking declaratory relief that she is entitled to underinsured motorist benefits under the Policy on November 16, 2023. Doc. No. 1 at ¶ 10. The California action was eventually dismissed without prejudice for failure to sufficiently allege personal jurisdiction after the present case was filed. Doc. No. 11-3 at 3. Plaintiffs filed this action on December 15, 2023, seeking declaratory relief that Defendant Finnuala is not entitled to underinsured motorist coverage under the Policy. Doc. No. 1. Defendant Finnuala filed her Motion to Dismiss Plaintiffs' Complaint on March 3, 2024. Doc. No. 11. The motion is now fully briefed and ripe for the Court's review.

### III. DISCUSSION

#### A. Personal Jurisdiction under Rule 12(b)(2)

---

[1] Prior to this lawsuit, Defendant Finnuala was also involved in a lawsuit with Gonzalez for injuries sustained in the accident. Doc. No. 1-2 at 1.

6

For the reasons discussed below, the Court finds it has specific, but not general, personal jurisdiction over Defendant Finnuala. With respect to general jurisdiction, Finnuala has submitted an affidavit stating that she was not a resident of North Carolina at the time Plaintiffs filed this suit, which the Court may consider at this stage. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); Doc. No. 11-1. Further, Plaintiffs appear to concede that Finnuala does not reside in North Carolina. *See* Doc. No. 16 at 5. Accordingly, because Finnuala was not a resident of North Carolina at the time this lawsuit was filed, the Court finds that Defendant Finnuala does not have the requisite "continuous and systematic contacts" for general personal jurisdiction. *CFA Inst.*, 551 F.3d at 292 n. 15.

The analysis of specific personal jurisdiction compels a different result. The named insureds of the Policy, Defendants Gerald and Jennifer Hanifan, are residents of North Carolina. Doc. No. 1 at ¶ 15. At the time of the accident, Finnuala was residing with her parents in North Carolina. Doc. No. 11-1 at 5 ¶ 2. As outlined above, to determine whether there are sufficient minimum contacts for specific jurisdiction, the Court considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims [arose] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014).

The parties disagree over whether Finnuala has purposefully availed herself of the privilege of conducting activities in North Carolina by demanding underinsured motorist coverage under a North Carolina insurance policy governed by North Carolina law. *See* Doc. No. 11 at 6; Doc. No. 16 at 5. "Where the defendant '*deliberately*' has engaged in significant activities within a state . . . he manifestly has availed himself of the privilege of conducting

7

business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (emphasis added) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)). While Defendants Gerald and Jennifer Hanifan are the named insureds of the policy, Finnuala is expressly contemplated as an insured "family member" and, more significantly, has "deliberately" exercised her rights as a beneficiary. *See* Doc. No. 1-5 at 13. She filed her claim with a claims adjuster in North Carolina and is seeking to obtain benefits under a North Carolina insurance policy. This conclusion is further supported by the choice-of-law provision in the Policy which states that it is issued in accordance with North Carolina law and all disputes regarding its terms shall be governed by the laws of the state. *See* Doc. No. 1-5 at 29; *see Burger King Corp.*, 471 U.S. at 482 ("Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes.").

Defendant relies on *Auto-Owners Ins. Co. v. LBC Landscaping Serv., Inc.* in support of her assertion that she lacks a purposeful contact with North Carolina because the insurance policy was issued to Finnuala's parents rather than her directly, and the vehicle involved in the accident was registered outside of North Carolina. No. 1:19CV1011, 2020 WL 3893284, at *3 (M.D.N.C. July 10, 2020). However, this case is distinguishable. In *Auto-Owners Ins. Co.*, the plaintiff failed to proffer any evidence that the defendant knew the insurance policy under which he was seeking coverage was executed in North Carolina, or that defendant should have otherwise expected to be haled into court in North Carolina. *Id.* Here, as explained above, Finnuala has taken several steps to seek benefits under this contract including purposeful contacts with North Carolina. While Finnuala points out that the underlying automobile accident occurred in California, the present matter concerns whether the terms of an insurance

8

policy issued and interpreted under the laws of North Carolina entitle a beneficiary to underinsured motorist coverage. *See Carefirst*, 334 F.3d at 397 ("Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact."). In sum, because Finnuala has purposefully availed herself of conducting activity in North Carolina and Plaintiffs' claim arises out of this action, requiring her to appear in North Carolina "does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316).[2]

### B. Arbitration under Federal Arbitration Act, 9 U.S.C. § 3

Beyond (unsuccessfully) challenging personal jurisdiction, Finnuala contends that the Policy contains a valid, binding arbitration clause under which this matter must proceed. Doc. No. 11 at ¶ 2. The arbitration provision in the Policy states that "If we and an **insured** do not agree: 1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an . . . **underinsured motor vehicle** . . . then the **insured** may demand to settle these disputed issues by arbitration." Doc. No. 1-5 at 40 (emphasis in original).

On this issue, the Court first agrees with Finnuala and finds that the parties have entered into a valid arbitration agreement which the Federal Arbitration Act requires the Court to enforce. *See* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order

---

[2] Finnuala also argues that this matter should be dismissed due to improper venue. *See* Doc. No. 11-3 at 7. Venue is permissible in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). For the same reasons as the Court gave in finding that it may exercise specific personal jurisdiction over Defendant, it finds that venue is appropriate in this Court, at least for the limited purpose of this Order. The Court, however, does not reach and makes no findings on the merits of a motion to transfer under 28 U.S.C. § 1404.

directing the parties to proceed with arbitration in accordance with the terms of the agreement."). Indeed, Plaintiffs concede that the arbitration agreement is valid. However, they argue that the "threshold issue" of whether the motor vehicle is underinsured is "presupposed" by the arbitration clause and accordingly requires the Court to first determine whether the vehicle is underinsured before arbitration may occur. Doc. No. 16 at 12, 15.

As noted above, the key dispute here is the scope rather than validity of the arbitration agreement. "[The] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Further, Plaintiffs offer no compelling reason why the claims at issue are not suitable for arbitration. The question of whether the vehicle is underinsured is clearly an issue relating to the determination of whether the insured is "legally entitled" to underinsured motorist coverage, which is a matter for the arbitrator. *See Henry Schein, Inc.*, 586 U.S. 63, 69 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). Thus, the Court finds that the parties' dispute over the applicability of underinsured motorist benefits must proceed through arbitration pursuant to the terms of the agreement.

Finally, the Court will stay rather than dismiss this action to comport with the supervisory role that the Federal Arbitration Act envisions for courts. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024) (explaining that "[k]eeping the suit on the court's docket makes good sense in light of" the court's ability to assist parties in arbitration proceedings).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 11) is **DENIED;**

2. The Parties are ordered to proceed with their dispute in arbitration pursuant to the Policy; and

3. This matter is stayed until further order of the Court pending arbitration of this dispute.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 10, 2024

Kenneth D. Bell
United States District Judge